USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/17/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

ANTHONY VIGNA,

Defendant.

No. S1 16-CR-786-3 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

On April 1, 2020, Defendant Anthony Vigna ("Mr. Vigna") filed a motion to modify his sentence under 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"). (ECF No. 258.) Asserting that he is at high risk of severe illness if he contracts the Coronavirus Disease of 2019 ("COVID-19") during his incarceration, Mr. Vigna seeks an order (1) reducing the term of his imprisonment to time served and (2) imposing a term of home detention for the amount of time left to be served on his term of imprisonment. (Def. Mem. of Law in Supp. of Mot. ("Mot."), ECF No. 260.) The Government opposes Mr. Vigna's motion on the grounds that, *inter alia*, the Court (a) lacks jurisdiction to grant Mr. Vigna relief because of his pending appeal before the Second Circuit and (b) lacks statutory authority under Section 3582(c)(1)(A) to modify Mr. Vigna's sentence or, in the event the Court agrees that it lacks jurisdiction, to issue an indicative ruling under Rule 37(a) of the Federal Rules of Criminal Procedure. (Gov't Mem. in Opp. to Def. Mot. ("Opp."), ECF No. 265.) This Court held a telephonic hearing on April 16, 2020 to address the parties' arguments.

For the following reasons, the Court DENIES Mr. Vigna's motion for lack of jurisdiction, without prejudice to renew if the Court re-obtains jurisdiction. To the extent there is a question as to whether it may issue an indicative ruling under Federal Rule of Criminal Procedure 37(a), the Court DEFERS deciding the issue to allow Mr. Vigna to make an application under Section 3582(c)(1)(A) to the Bureau of Prisons. In deferring this decision, the Court recommends that the

Bureau of Prisons give expeditious and favorable consideration to Mr. Vigna's request for compassionate release.

## BACKGROUND

### A. Mr. Vigna's Age and Health Issues

Mr. Vigna is a 62-year-old male currently incarcerated at Federal Correctional Institution, Otisville ("FCI Otisville"). (Mot. 6.) As he has previously explained in his sentencing submission, dated July 11, 2019, Mr. Vigna suffers from a litany of chronic and debilitating illnesses and diseases. Mr. Vigna has type 2 diabetes mellitus, a chronic disease with which he was diagnosed in 2013. (ECF No. 215 at 18.) His diabetes is complicated by several factors, such as neuropathy—a condition consistent with nerve damage from elevated blood sugars over time—and elevated urine microalbumin—which represents early kidney damage. (*Id.*) Mr. Vigna also suffers from hypertension, dyslipidemia (abnormal cholesterol), sleep apnea, and morbid obesity. (*Id.*)

Mr. Vigna takes many medications to treat his various ailments. Specifically, he has been prescribed (1) Lantus insulin (long acting insulin), (2) Novolog insulin (rapid acting insulin), (3) Invokana (diabetes pill), (4) Metformin (diabetes pill), (5) Trulicity (diabetes medication), (6) Lisinopril (blood pressure medication), and (7) Rosuvastatin (cholesterol medication). (*Id.* at 18-19.) As stressed by his physician, Dr. Chee Yeung Chan, "at his present course and pace, Mr. Vigna is likely to have progression of [his] complications," leading to further ailments such as kidney disease, heart disease, stroke, and retinopathy (eye damage). (*Id.* at 19.)

### B. Mr. Vigna's Current Sentence and Incarceration

On March 22, 2019, Mr. Vigna pleaded guilty to a one-count superseding indictment charging him with participating in a conspiracy to commit mail, wire, and bank fraud, in violation of 18 U.S.C. § 371. (ECF No. 211.) As a result of his plea, on July 25, 2019, Mr. Vigna was

sentenced to a term of imprisonment of one year and one day, to be followed by three years of supervised release. (ECF No. 228.) Mr. Vigna filed a notice of appeal regarding his sentence on August 7, 2019, which is still pending. (ECF No. 231.)

Mr. Vigna began serving his sentence on September 9, 2019 at FCI Otisville. (Mot. 7.) Although Mr. Vigna is scheduled to be released from the custody of the Bureau of Prisons ("BOP") on July 16, 2020 (Opp. 2), he has been approved for a pre-release transfer to a residential halfway house in Brooklyn, New York. (Mot. 7; Opp. 2.) Mr. Vigna's transfer is scheduled for April 22, 2020. (Mot. 7; Opp. 2.) Mr. Vigna has further represented to the Court that he will be eligible to serve the remainder of his sentence in home confinement on May 10, 2020.

**C. Mr. Vigna's Application With BOP**

Mr. Vigna has represented that, on December 18, 2019, he requested "an early release" from FCI Otisville. (ECF No. 264-1 at 2.) He was instructed to submit a letter and provide a resume to make his request. (*Id.*) On January 10, 2020, his case manager told him that she recommended for his release to home confinement on April 1, 2020. (*Id.*) After several months passed, Mr. Vigna was informed on or about March 24, 2020 that he had been approved for the above-noted pre-release transfer to a halfway house. (*Id.* at 4.)

Despite this approval, on March 31, 2020, Mr. Vigna wrote to an officer at FCI Otisville seeking "early release due to health and compassionate reasons." (*Id.* at 8.) Specifically, Mr. Vigna requested that BOP switch the location where he would serve the remainder of his sentence from a halfway house to home confinement. (*Id.* at 8-9.) In support, Mr. Vigna explained his concerns about the recent COVID-19 pandemic. (*Id.* at 8.) Mr. Vigna further noted his underlying medical issues, such as diabetes[1] and high blood pressure, as other relevant factors supporting his

[1] Mr. Vigna explained in his request that he had registered blood sugar levels "in the high 300's at various stages during [his]" incarceration. (*Id.*)

application. (*Id.*) He then concluded that the "recently enacted CARES [Coronavirus Aid, Relief, and Economic Security] Act . . . permits the BOP authority in a time of emergency to lengthen the maximum amount of time of home confinement" under 18 U.S.C. § 3624(c)(3).[2] (*Id.*)

The next day, Mr. Vigna, through his counsel, submitted a formal application to FCI Otisville Warden James Petrucci ("Warden Petrucci"), requesting that BOP release Mr. Vigna to home or community confinement under 18 U.S.C. § 3624(c). (Mot. Ex. A at 1.) Like his March 31 application, Mr. Vigna's letter to Warden Petrucci cited concerns about the COVID-19 pandemic and Mr. Vigna's various medical conditions that, as recognized by the Centers for Disease Control and Prevention ("CDC"), placed him at "high risk" of suffering from serious illness if he were to contract the disease. (*Id.* at 2.) Mr. Vigna's letter also noted that he poses no threat to the community and that he lacks any prior criminal history. (*Id.*)

That same day, Mr. Vigna filed the present motion. (ECF No. 258.) The Court conducted a hearing on the motion on April 16, 2020, and this Opinion and Order followed.

**DISCUSSION**

Citing understandable concerns about the COVID-19 pandemic and the potentially devastating effects the disease may have on his health, Mr. Vigna moves this Court under 18 U.S.C. § 3582(c)(1)(A) for an order (1) reducing the term of his imprisonment to time served and (2) imposing a term of home detention for the amount of time left to be served on his term of

---

[2] The Court notes that, in addition to this provision under the CARES Act, on March 26, 2020, Attorney General William Barr issued guidance to the Bureau of Prisons for how to determine when an inmate should serve his or her sentence under home confinement. *See* Office of the Attorney General, Memorandum for Director of Bureau Prisons: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. Under that directive, BOP must consider the "totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaust list of discretionary factors," including (1) age and vulnerability to COVID-19, (2) security level of the facility currently holding the inmate, (3) the inmate's conduct in prison, (4) inmate's score under PATTERN (the "Prisoner Assessment Tool Targeting Estimated Risk and Needs"), (5) whether the inmate has a verifiable re-entry plan to prevent recidivism and maximum public safety, and (6) the inmate's crime of conviction and assessment of danger posed to the community. *Id.*

imprisonment. (Mot. 1.) In opposition, the Government argues that, because Mr. Vigna filed a notice of appeal concerning his sentence, this Court has been divested of jurisdiction over any modification to Mr. Vigna's sentence. (Opp. 5.) The Court must agree.

"The filing of a notice of appeal is an event of jurisdictional significance" because "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). This rule applies with equal force in criminal cases. *United States v. Ransom*, 866 F.2d 574, 575 (2d Cir. 1989) (citing *Berman v. United States*, 302 U.S. 211, 214 (1937); *United States v. Katsougrakis*, 715 F.2d 769 (2d Cir. 1938)). A district court will not regain jurisdiction until the issuance of the mandate by the clerk of the court of the appeals. *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (citing *United States v. Rivera*, 844 F.2d 916, 921 (2d Cir. 1988)).

Although exceptions to this jurisdictional rule exist, *see United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 WL 1819961, at *1 (S.D.N.Y. Apr. 10, 2020) (noting exceptions such as attorneys' fees, proceedings on the merits after grant or denial of a preliminary injunction, and clerical errors), the rule does not permit courts to "modify a judgment substantively." *See United States v. Viola*, 555 F. App'x 57, 60 (2d Cir. 2014). This bar encompasses motions brought under Section 3582(c)(1)(A). *See Martin*, 2020 WL 1819961 at *2 ("Once Martin filed his notice of appeal challenging the Court's sentence, jurisdiction over the questions raised in his § 3582(c) motion transferred to the Second Circuit."); *United States v. Ward*, No. 01-40050-01-DDC, 2019 WL 1620439, at *3 (D. Kan. Apr. 16, 2019) ("The court thus cannot enter an order reducing Mr. Ward's sentence while his appeal—collaterally challenging the basis for his sentence—is pending.").

Here, neither party disputes that Mr. Vigna filed a notice of appeal of his sentence on August 7, 2019. (ECF No. 231.) That appeal is still pending, with Mr. Vigna having until June 9, 2020 to perfect his appeal and file his principal brief. (*See* Opp. 3 (quoting *United States v. Vigna*, No. 19-2430, Dkt. 40 (2d Cir. Feb. 7, 2020)).) Although this will understandably be a frustrating outcome for Mr. Vigna, under these circumstances, this Court is without authority to rule on his Section 3582(c)(1)(A) application because it would affect "an aspect of the case that [is] before [the Court of Appeals]." *Martin*, 2020 WL 1819961 at *2 (quoting *Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002). Accordingly, the Court must deny Mr. Vigna's application without prejudice and with leave to renew if the Court re-obtains jurisdiction.

The above notwithstanding, both parties agree that Mr. Vigna may not be entirely without recourse. Federal Rule of Criminal Procedure ("Rule 37) anticipates this exact jurisdictional issue. Under Rule 37, "[i]f a timely motion is made for relief that the court lacks authority to grant," the court may (1) defer considering the motion, (2) deny the motion, or (3) "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue" (*i.e.*, an indicative ruling).

The Government, however, opposes the Court issuing an indicative ruling under Rule 37(a)(3). (Opp. 9-10.) The Government observes that, while his present motion is pursuant to Section 3582(c)(1)(A), Mr. Vigna's application at FCI Otisville was made pursuant to 18 U.S.C. § 3624(c)—an entirely different statutory scheme for which judicial review is not permitted, *see Cotona v. Fed. Bureau of Prisons*, No. 13 Civ. 609(JMF), 2013 WL 5526238, at *1 (S.D.N.Y. Oct. 7, 2013). (*Id.* at 9-11.) For this reason, the Government contends that, under the plain terms of the statute, Mr. Vigna's Section 3582(c)(1)(A) application cannot be considered timely—a prerequisite for Rule 37(a)(3) indicative ruling—because he never even made that application to

the BOP. (Opp. 10-11.) Put differently, the Government's position is, in essence, that Mr. Vigna failed to comply with Section 3582(c)(1)(A)'s exhaustion requirements—which mandate that a defendant, prior to seeking judicial relief under Section 3582(c)(1)(A), either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait for "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever is earlier, 18 U.S.C. § 3582(c)(1)(A)—thereby leaving the Court without statutory authority to act in any capacity.

Under normal circumstances, the Government's position would likely carry the day. But these times are anything but normal. It is beyond debate that "[t]he country faces unprecedent challenges from the [COVID-19] pandemic." *United States v. Nkanga*, No. 18-CR-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020). And these challenges grow more difficult and trying each passing day, especially in the prison context. Indeed, courts are legion in recognizing the unique risks that inmates like Mr. Vigna face, given that "COVID-19 is much more easily transmitted, and is thus particularly dangerous, in the prison environment." *United States v. Canale*, No. 17-CR-286 (JPO), 2020 WL 1809287, at *1 (S.D.N.Y. Apr. 9, 2020); *United States v. Gross*, No. 15-cr-769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020) ("[i]ndividuals in carceral settings are at a '*significantly higher*' risk of spreading infectious diseases."); *Nkanga*, 2020 WL 1529535 at *1 ("Those detained in jails and prisons face particularly grave danger [related to COVID-19]."); *Coronel v. Decker*, No. 20-cv-2472 (AJN), 2020 WL 1487274, at *3 (S.D.N.Y. Mar. 27, 2020) ("Yet the carceral setting in which they are detained means that preventative strategies like social distancing are difficult to implement, thus creating a 'significantly higher' risk for spread of infectious diseases like COVID-19.").

Likewise, it is beyond dispute that Mr. Vigna's age and medical conditions leave him especially vulnerable in this current pandemic. As noted above, Mr. Vigna is 62 years old and suffers from type 2 diabetes mellitus, hypertension, dyslipidemia, sleep apnea, and morbid obesity. Numerous courts have recognized that at least one, if not all, of Mr. Vigna's conditions place him at a higher risk of a devastating outcomes if he contracts COVID-19. *See, e.g.*, *United States v. Hansen*, No. 07-CR-00520(KAM), 2020 WL 1703672, at *9 (E.D.N.Y. Apr. 8, 2020) ("Mr. Hansen has Type II diabetes, and research by the World Health Organization suggests that the risk of death from COVID-19 is significantly higher for individuals who, like Mr. Hansen, are over 60 years old and diabetic." (citations omitted)); *Gross*, 2020 WL 1673244 at *1 (concluding that defendant who was "severely overweight and suffer[ed] from high blood pressure and sleep apnea" was at "a higher risk for severe illness if he contracts COVID-19"); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *3 (D. Conn. Apr. 2, 2020) (agreeing with defendant's position that she was at higher risk of vulnerability to COVID-19 as a result of her diabetes and high blood pressure). Such views squarely comport with the guidance that has been offered by the CDC. Centers For Disease Control and Prevention, *People Who Need Extra Precautions: Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (underlying medical conditions that would place an individual at a higher risk for severe illness if he or she contracts COVID-19 include (1) serious heart conditions; (2) severe obesity; and (3) diabetes).

The dangers of COVID-19 are compounded by the heightened risk of contracting the disease while in incarceration. As courts have recognized, and as Mr. Vigna has explained (Mot. 13), "inmates at Otisville live in close quarters" and "social distancing is impracticable if not impossible," making it difficult for inmates, such as Mr. Vigna, to protect themselves from the

spread of COVID-19. *See United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020).

Plainly, as the above reveals, Mr. Vigna is a prime candidate for compassionate relief under the present circumstances. The question remains, however, whether Mr. Vigna must have exhausted his administrative remedies under Section 3582(c)(1)(A) for this Court to issue an indicative ruling under Rule 37(a)(3). On this exhaustion issue, there is a glaring split in opinions just within this circuit. Some Courts have concluded that Section 3582(c)(1)(A)'s exhaustion requirement is waivable under certain limited exceptions, such as futility or undue prejudice. *See, e.g.*, *United States v. Sawicz*, 2020 WL 1815851 at *2 (waiving the exhaustion requirement under Section 3582(c)(1)(A)); *Zuckerman*, 2020 WL 1659880 at *3 (recognizing that there were exceptions to 3582(c)'s exhaustion requirement); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422 at *2 (S.D.N.Y. Apr. 1, 2020) (same); *Colvin*, 2020 WL 1613943, at *2. Others have strictly enforced Section 3582(c)(1)(A)'s exhaustion requirement. *See, e.g.*, *United States v. Ogarro*, No. 18-cr-373-9 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020) (concluding that Section 3582(c)(1)(A)'s exhaustion requirements were not waivable); *United States v. Roberts*, No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (same); *United States v. Woodson*, No. 18-cr-845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020) (same). Of note, the one circuit to address this issue, the Third Circuit, has opined that Section 3582(c)(1)(A)'s requirements are not waivable. *See United States v. Raia*, No. 20-1033, 2020 WL 1647922 (3d Cir. Apr. 2, 2020) (concluding that defendant's failure "to comply with § 3582(c)(1)(A)'s exhaustion requirement . . . present[ed] a glaring roadblock foreclosing compassionate release," notwithstanding the risks of COVID-19).

While the arguments on both sides are persuasive, the Court will decline to address the exhaustion issue at this time, given that Mr. Vigna has not yet made a Rule 3582(c)(1)(A) application before the BOP.  Even if some courts have recognized that waiver may be available under Section 3582(c)(1)(A) in exigent circumstances, no such case (at least of which this Court is aware) has involved an inmate seeking compassionate relief without at least submitting a request under that statute to the BOP prior to, or in conjunction with, his or her application to the court.[3]

Instead, out of an abundance of caution, the Court will defer deciding the exhaustion question, and thus resolving the Rule 37(a)(3) issue, to allow Mr. Vigna to immediately make a Section 3582(c)(1)(A) application for BOP's consideration.  Although the Court acknowledges the tremendous stress BOP is under in these unprecedent times (*see* Gov't Reply 2-4), it is confident that BOP understands the gravity of the situation and can act with the requisite expediency to address Mr. Vigna's application.  In fact, several courts have recognized that there is "[n]othing in the [BOP's] internal procedures for implementing the compassionate release statute that suggests that it cannot complete its review process, including any appeal, extremely quickly." *Canale*, 2020 WL 1809287 at *2 (quoting *United States v. Russo*, No. 16 Cr. 441, Dkt. No. 54 at 5 n.1 (S.D.N.Y. Apr. 3, 2020)); *Gross*, 2020 WL 1673244 at *3 (same).  The Court expects that, if Mr. Vigna makes his request, BOP will resolve it prior to April 22, 2020, the date on which Mr. Vigna is scheduled for pre-release transfer to the halfway house.[4]

---

[3] Mr. Vigna essentially seeks the same outcomes from both the BOP and the Court, regardless of the specific statute under which he seeks relief.  However, as the Government notes, these are ultimately different statutory schemes with different considerations underlying each. (Gov't Letter in Reply dated April 15, 2020 ("Gov't Reply"), ECF No. 269 at 6-7).  Therefore, even if exhaustion were waivable under Section 3582(c)(1)(A), the Court views it prudent, and seemingly within the Congressional intent, that BOP at least have an initial or concurrent opportunity to speak to a Section 3582(c)(1)(A) application. *Cf. Gross*, 2020 WL 1673244 at *3 (deferring ruling on Section 3582(c)(1)(A) motion "in order to afford the Bureau of Prisons the opportunity—that it requests and the First Step Act contemplates—to assess [defendant's] request in the first instance).

[4] In the alternative, the Court strongly urges BOP to take immediate action on Mr. Vigna's application made under 18 U.S.C. § 3624(c) on March 31, 2020 and April 1, 2020.

The Court recommends that BOP favorably consider Mr. Vigna's request for compassionate release. Although Mr. Vigna is convicted of a serious crime, his crime was nonviolent, and he has no prior criminal history; simply put, he presents no danger to the community. Moreover, he has served eighth months of his one year and one day sentence and has earned good-conduct credit while incarcerated, such that he is eligible for early release from BOP custody on July 16, 2020 and is even eligible to begin serving the remainder of his sentence in home confinement in just a few weeks, beginning on May 10, 2020. When coupling these facts with the significant and dire health risks Mr. Vigna faces from COVID-19 as a result of his continued incarceration, the Court has no doubt it would conclude that compassionate release is warranted in this case if it could properly do so. *See Hansen*, 2020 WL 1703672 at *9 (concluding that defendant's "medical risk from the COVID-19 pandemic, taken alone, arguably constitutes 'extraordinary and compelling' circumstances,'" where defendant had Type II diabetes and was over the age of 60). The Court thus urges BOP to follow suit.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Mr. Vigna's a motion to modify his sentence for lack of jurisdiction, without prejudice to renew if this Court re-obtains of jurisdiction. To the extent a indicative ruling may be available to Mr. Vigna under Federal Rule of Criminal Procedure Rule 37(a), the Court further defers making a decision, as well as deciding any underlying issues of timeliness/exhaustion, to allow Defendant to make a compassionate relief application to the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A). The Court expects that the Bureau of Prisons will address Mr. Vigna's anticipated application under 18 U.S.C. § 3582(c)(1)(A) prior to his pre-

release transfer to the residential halfway house in Brooklyn, New York, which is currently scheduled for April 22, 2020.

The Court directs the Government to inform the Court by April 21, 2020 of the actions taken by BOP in response to this Order. If BOP has not acted on Mr. Vigna's requested at this time, Mr. Vigna is granted leave to renew his request for an indicative ruling under Rule 37(a).

The Government is directed to serve a copy of this Opinion and Order to FCI Otisville Warden James Petrucci as soon as possible. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 258.

Dated: April 17, 2020
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge