USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __10/8/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

                              Plaintiff,

            -against-

ANTHONY VIGNA

                              Defendants.

---

16-cr-786-03 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

*Pro se* Petitioner Anthony Vigna ("Petitioner") seeks reconsideration of the Court's May 16, 2024 Order, denying his requests for discovery and challenges to the amount of restitution, and further requests that the Court construe his June 7, 2024 submission as a petition for a writ of coram nobis. For the reasons set forth below, the Court 1) DENIES the motion for reconsideration, 2) DEEMS Vigna's June 7, 2024 submission a petition for a writ of coram nobis, and 3) DISMISSES the petition.

## PROCEDURAL HISTORY

Vigna was charged on November 29, 2016, with conspiracy to commit mail, wire, and bank fraud under 18 U.S.C. § 1349. (ECF No. 2, Indictment.) On March 22, 2019, he pleaded guilty pursuant to a plea agreement to the superseding information following a Rule 11 allocution (ECF No. 211, Proceedings Transcript.) On July 25, 2019, the Court sentenced him to one year and one day in prison, three years' supervised release, a $100 special assessment, and $250,500 in restitution. (ECF No. 228, Vigna Sentencing Judgment.)

Despite an appellate waiver in his plea agreement, Vigna filed a notice of appeal, but did not pursue it. (ECF No. 231, Notice of Appeal). The Second Circuit dismissed the appeal on July

16, 2021. (ECF No. 353, Notice of Appeal Dismissal.) Vigna's term of supervised release expired on July 15, 2023. (*See* Vigna Sentencing Judgment.)

Beginning in July 2023, Vigna submitted a series of letters to the Court, challenging restitution, seeking discovery including grand jury materials, and requesting that his June 7, 2024 letter be construed as a petition for a writ of error coram nobis.[1] (ECF No. 393 June 7, 2024 Vigna Letter.) On May 16, 2024, the Court denied Vigna's discovery motions and his challenge to restitution as untimely. (ECF No. 391, Memo Endorsement ("Mem. End.").) On June 26, 2024, Vigna moved for reconsideration of that order. (ECF No. 392, June 26, 2024 Vigna Letter.) The Government opposed on July 8, 2024. (ECF No. 394, July 2024 Government ("Gov't") Letter at 4.)

## LEGAL STANDARD

For a motion for reconsideration to succeed on the merits, a movant must demonstrate either (1) "an intervening change in controlling law", (2) "the availability of new evidence not previously available, or" (3) "the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012).

Separately, a writ of error coram nobis may be granted under the All Writs Act, 28 U.S.C. § 1651(a), where "extraordinary circumstances are present." *Nicks v. United States,* 955 F.2d 161, 167 (2d Cir. 1992). The underlying conviction is presumed valid, and "the burden rests on the accused to show otherwise." *United States v. Morgan,* 346 U.S. 502, 512 (1954). Coram

---

[1] *See* ECF Nos. 379, 382, 383, 385, 387-388, 390, 392 [ July 19, 2023-June 26, 2024], 395-400 [July 17, 2024-October 15, 2024 Vigna Letters], 402-03 [November 14, 2024 Vigna Letters], 405-07 [December 16, 2024 to March 6, 2025 Vigna Letters], 408-09 [March 20-31, 2025 Vigna Letters], 423-24 [August 11, 2025-September 23, 2025 Vigna Letters.]

nobis is not a substitute for appeal, and relief is strictly confined to those cases in which "'errors ... of the most fundamental character'" have rendered "'the proceeding itself irregular and invalid.'" *United States v. Carter*, 437 F.2d 444, 445 (5th Cir.) (per curiam) (quoting *United States v. Mayer,* 235 U.S. 55, 69 (1914)). Nonetheless, the Court must construe *pro se* pleadings liberally and interpret them "to raise the strongest arguments they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original); *see also Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

## BACKGROUND

On November 29, 2016, a grand jury in the Southern District of New York returned an indictment charging Anthony Vigna and others with participating in a conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349, arising from activities connected to the Terra Foundation. (July 2024 Gov't Letter at 1.) Vigna and others solicited distressed mortgage borrowers as clients of Terra and falsely promised—through audits, "Qualified Written Requests," and filings of mortgage discharges—to eliminate their mortgage debts. (Superseding Information at 2.) In reality, the procedure was unauthorized and ineffective. (*Id.*) Vigna and his co-conspirators filed nearly sixty false mortgage discharges in New York and Connecticut, purporting to discharge over $33 million in mortgage debt, while charging clients fees, and directing some to take out new federally insured loans from which Terra retained proceeds. (*Id.* at 2-3.) In many instances, the promised audits were never performed. (*Id.* at 4.)

On March 20, 2019, Vigna consented to the filing of a superseding information charging conspiracy under 18 U.S.C. § 371. (*See generally id.*) After an initial failed plea attempt, Vigna entered a guilty plea on March 22, 2019, before the Honorable Nelson S. Román. (July 2024 Gov't Letter at 1.) During the plea allocution, Vigna confirmed under oath that he had reviewed the plea agreement with counsel, understood the charges, and admitted his participation in filing fraudulent

mortgage discharge papers. (*Id.* at 2.) The plea agreement included restitution obligations related to "Schedule A" mortgage discharges, including a $1.2 million discharge associated with victim Augustine Alvarez. (*Id.*) On July 25, 2019, following pre-sentence briefing and an unobjected-to Presentence Investigation Report, the Court sentenced Vigna to one year and one day of imprisonment, to be followed by three years of supervised release, and imposed a $100 mandatory special assessment and restitution in the amount of $250,500. (*Id.* at 3; *see also* Vigna Sentencing Judgment.)

Beginning in July 2023, Vigna submitted a series of letters[2] to the Court, challenging restitution, seeking discovery including grand jury materials, and requesting that his June 7, 2024 filing be construed as a petition for a writ of error coram nobis. (June 7, 2024 Vigna Letter.) On May 16, 2024, the Court denied Vigna's discovery motions and his challenge to restitution as untimely. (Mem End.) On June 26, 2024, Vigna moved for reconsideration of that order. (June 26, 2024 Vigna Letter.) The Government opposed on July 8, 2024, urging denial and dismissal. (July 2024 Gov't Letter.)

## DISCUSSION

*Pro se* Petitioner seeks reconsideration of the Court's May 16, 2024 Order, denying his requests for discovery and challenges to the amount of restitution, and further requests that the Court construe his June 7, 2024 submission as a petition for a writ of coram nobis. The Court addresses them in turn.

### A. Vigna's Motion for Reconsideration is Denied

Vigna's motion for reconsideration of his requests for discovery and challenges to the amount of restitution does not meet the stringent standard applicable in the Southern District of

---

[2] *See* ECF Nos. 379, 382, 383, 385, 387-388, 390, 392 [ July 19, 2023-June 26, 2024], 395-400 [July 17, 2024-October 15, 2024 Vigna Letters], 402-03 [November 14, 2024 Vigna Letters], 405-07 [December 16, 2024 to March 6, 2025 Vigna Letters], 408-09 [March 20-31, 2025 Vigna Letters], 423-24 [August 11, 2025-September 23, 2025 Vigna Letters.]

New York. A motion for reconsideration cannot serve as a vehicle to raise new arguments, facts, or issues that were not previously before the Court. *See Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001); *Seoul Viosys Co. v. P3 Int'l Corp.*, No. 16-CV-6276 (AJN)(SN), 2017 WL 5897446, at *1 (S.D.N.Y. Nov. 29, 2017). Likewise, grand jury materials remain secret and may be disclosed only in limited circumstances, such as impeachment or credibility testing, upon a particularized showing of need; wholesale post-conviction access is not permitted. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682–83 (1958).

In this matter, Vigna fails to identify a change in law, new evidence, or clear error for the Court to consider a motion for reconsideration let alone a particularized showing of need required for grand jury transcript access. Vigna argued that access to grand jury transcripts and other discovery was necessary to "test" the validity of his conviction and restitution, to verify testimony, and identify witnesses, further asserting that denial of access violated his Fifth Amendment rights. (ECF No. 424, Sept. 2025 Vigna Letter at 3–4.) The Government counters that Vigna's restitution challenges were barred by his plea waiver and final judgment; and that his request was speculative and unsupported by any irregularity in the grand jury process (Gov't Letter at 2–4.) The Court agrees.

Vigna's motion does not meet the strict standard for reconsideration. Rather than identifying any intervening change in law or error, he simply restates his interpretation of events and reasserts arguments previously rejected. *See Seoul* Viosys, at *1 (strict standard for reconsideration not met where moving party sought to "relitigate an issue already decided" and "failed to point to any evidence or case law overlooked by the Court."). As previously held on May 16, 2024[3], Vigna's discovery and restitution challenges—raised years after sentencing, release

---

[3] *See* May 16, 2024 Mem. End at 8. ("Now, nearly five years after his sentencing, nearly four years following his release from incarceration, and following his period of supervised release, Def. seeks certain discovery to challenge the amount of restitution he is owed. Def.'s opportunity to challenge such restitution came and went many years ago and is now untimely.")

from custody, and completion of supervision—were untimely. (*See* Mem. End. at 8.) That determination remains unchanged. Vigna knowingly entered a negotiated plea agreement, confirmed under oath his understanding of its terms, and expressly waived his rights to appeal or collaterally attack restitution and discovery.[4] (Plea Agreement at 4.) Nearly five years later, he seeks to undo obligations he voluntarily accepted. Vigna also fails to identify any substantive irregularities in the grand jury process that would call his conviction into question. Because his motion offers no new authority or facts and merely attempts to relitigate settled matters, Vigna's motion for reconsideration with respect to his requests for discovery and challenges to the amount of restitution is denied.

**B. Vigna's June 7, 2024 is Converted into a Writ of Coram Nobis, But the Petition is Dismissed**

The Court converts Vigna's June 7, 2024 letter into a petition for a writ of coram nobis, which is without objection from the Government.[5] (July 2024 Gov't Letter at 6.)

However, Vigna's coram nobis petition is meritless and therefore, dismissed. The writ of error coram nobis is an exceptional, limited form of relief. *See* Nicks, at 166-67. It "is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States,* 146 F.3d 88, 89 (2d Cir. 1998). "[T]he power of the [C]ourt ... to vacate ... judgments for errors of fact exist[s] ... [only] in those cases where the errors were of the most fundamental character; that is, such as rendered the proceeding itself irregular and invalid." *United States v. Mayer,* 235 U.S. 55, 69 (1914); *Foont v. United States,* 93

---

[4] Vigna Plea Agreement at 4. ("The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction either on direct appeal or collaterally…")

[5] In its July 8, 2024 letter, the Government expressly stated it did not object to Vigna's June 7, 2024 submission being construed as a petition for a writ of coram nobis (Gov't Letter at 6). Accordingly, the Court treats Vigna's June 7, 2024 letter as a petition for a writ of coram nobis.

F.3d 76, 78 (2d Cir. 1996) (same); *see also Carlisle v. United States,* 517 U.S. 416, 429 (1997) (observing that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate" (internal quotation marks omitted)). Generally, therefore, coram nobis relief "after final judgment and exhaustion or waiver of any statutory right of review should be allowed ... only under circumstances compelling such action to achieve justice," *United States v. Morgan,* 346 U.S. 502, 511 (1954), and "where extraordinary circumstances are present," *Nicks,* 955 F.2d at 167.

Consistent with these principles, the Second Circuit has created a three-pronged standard for when coram nobis relief is appropriate: "1) there are circumstances compelling such action to achieve justice; 2) sound reasons exist for failure to seek appropriate earlier relief; and 3) the petitioner continues to suffer legal consequences from his [or her] conviction that may be remedied by granting of the writ." *Foont,* at 79 (quoting *Nicks,* 955 F.2d at 167 and *Morgan*, 346 U.S. at 511 (citations, alteration, and internal quotation marks omitted)). Vigna cannot satisfy any of these requirements and therefore, coram nobis relief is not appropriate.

First, Vigna has not shown any valid reason for failing to seek relief earlier. Analysis begins with the second prong of the standard—timeliness—because it presents a threshold procedural hurdle to coram nobis relief. *See Foont*, at 79 (recognizing that the timeliness of a coram nobis petition constitutes a "threshold issue" that must be addressed before reaching the merits of the claim.) "[U]nless the petitioner can demonstrate 'sufficient justification for his failure to seek relief at an earlier time, the writ is unavailable and his petition for coram nobis should be dismissed.'" *Sahin v. United States*, No. 8:13-CV-0358, 2014 WL 2177088, at *2 (N.D.N.Y. May 22, 2014) (quoting *Nicks*, 955 F2d at 167-68). While Vigna argues that coram nobis should be granted to address ongoing reputational and financial harms from his conviction (September 23, 2025 Vigna Letter at 7-8), he filed but did not pursue a direct appeal and waited until after he had served his

custodial sentence and completed supervised release to bring these challenges. The evidence and arguments he now advances were available to him at the time of his plea and sentencing, yet he offers no justification for waiting until years after final judgment to present them. Such unexplained delay undermines the public interest in finality and precludes the availability of coram nobis relief.

Second, Vigna has not demonstrated the type of ongoing collateral consequence required to warrant relief. To establish continuing legal consequences, a petitioner must show a concrete and non-speculative threat of serious harm. *Porcelli v. United States*, 404 F.3d 157, 158 (2d Cir. 2005). By contrast, speculative harms—such as generalized reputational injury, the possibility of future employment difficulties, or abstract stigma—are insufficient. *See id.*; *see also Fleming*, 146 F.3d at 91 (rejecting as inadequate the petitioner's claim that his conviction prevented him from obtaining financial-sector employment). Here, Vigna fails to identify any specific legal disability or concrete harm that flows from his conviction. He does not face deportation, loss of civil rights, or any other direct legal impediment traceable to the judgment. Instead, his assertions amount to speculative claims of reputational harm and generalized difficulty finding work—precisely the type of non-specific consequences that courts have deemed inadequate to justify the extraordinary remedy of coram nobis. *See Dixon v. United States*, No. 24-CV-4312 (LAP), 2024 WL 3413735, at *3 (S.D.N.Y. July 15, 2024).

Finally, even if the petition was timely and Petitioner adequately alleged a concrete ongoing legal consequence, nothing in the petition suggests that the extraordinary remedy of coram nobis relief is warranted. While Vigna asserts that restitution obligations are being collected from his Social Security benefits (ECF No. 397, September 12, 2024 Vigna Letter at 2), that financial enforcement does not constitute a fundamental defect in the criminal judgment. Restitution was expressly contemplated by the plea agreement, incorporated into the Presentence Investigation

Report, and ordered at sentencing.  (Gov't Letter at 2.) The Second Circuit has also noted that it is unsettled whether coram nobis may even be used to collaterally challenge restitution orders. *See United States v. Rutigliano,* 887 F.3d 98, 109-111 (2d Cir. 2018) (defendant was not entitled coram nobis relief reducing her restitution obligation.) Even if it could, Vigna's arguments were raised and rejected at sentencing and are foreclosed by his plea agreement, which he voluntarily signed. Because Vigna makes no showing that justice requires an extraordinary remedy of last resort in this case, the Court denies his petition for a writ of error coram nobis.

## CONCLUSION

For the reasons stated above, Defendant Anthony Vigna's motion for reconsideration of the Court's May 16, 2024 Order is DENIED with prejudice. The Court further DEEMS Vigna's June 7, 2024 submission to be a petition for a writ of coram nobis and DENIES the petition with prejudice. The Clerk of Court is respectfully directed to terminate the motions at ECF No. 383, terminate the action, and to mail a copy of this Opinion to the *pro se* Plaintiff at the address listed on ECF and to show proof of service on the docket.

Dated:    October 8, 2025
          White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge